FILED
CLERK

4/13/2016 2:53 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERWIN JACKSON,  #08A5175,

                       Plaintiff,

          -against-

COUNTY OF NASSAU, MERYL J. BERKOWITZ,
in her official and individual capacity, and
AMES C. GREWERT, in his official and individual
capacity,

                    Defendants.
-------------------------------------------------------------X
FEUERSTEIN, District Judge:

ORDER
15-CV-7218(SJF)(AKT)

I.       Introduction

On December 11, 2015, incarcerated *pro se* plaintiff Erwin Jackson ("plaintiff") filed a complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Nassau ("the County"); the Honorable Meryl J. Berkowitz ("Judge Berkowitz"), Acting Supreme Court Justice; and Ames C. Grewert ("ADA Grewert"), an Assistant District Attorney in the Nassau County District Attorney's Office (collectively, "defendants"), accompanied by an application to proceed *in forma pauperis*. By Order dated March 18, 2016, plaintiff's application to proceed *in forma pauperis* was denied pursuant to 28 U.S.C. § 1915(g), and plaintiff was directed to pay the full amount of the Court's filing fee. See 28 U.S.C. § 1914(a). On or about April 1, 2016, plaintiff paid the requisite filing fee. Nonetheless, for the reasons set forth below, plaintiff's claims are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. § 1915A(b).

1

II.    Plaintiff's Claims

A.    Claims against Judge Berkowitz

In his first cause of action, plaintiff alleges, *inter alia*, that from 2012 through 2015, Judge Berkowitz, "[w]hile acting under the color of State law as an [sic] temporarily appointed Nassau County Acting Supreme Court Justice, in the complete absence of being duly sworn and failing to file her Constitutional oath of office as mandated by law, unlawfully acquired subject matter jurisdiction over the plaintiff's persons [sic] and collateral [sic] post-conviction motions." (Complaint ["Compl."], ¶ 1).  According to plaintiff, although Judge Berkowitz was "made aware by the plaintiff that she lacked jurisdiction to preside over the plaintiff's post-conviction motions which were dated April 23, 2015 and as amended April 28, 2015[,] [she] intentionally refused to disqualify herself . . .[,] [and] intentional[ly] rubber stamp[ed] [the] denial of the plaintiff's non-frivolus [sic] substantial post-conviction motions whereby dening [sic] the plaintiff access to a court of competent jurisdiction . . . ." (Id., ¶ 2) (emphasis omitted).  Plaintiff further alleges that Judge Berkowitz, (1) "established an [sic] non-judicial individual and personal custom, policy, and practice of intentionally dening [sic] and rubber-stamping all pro se motions/petitions submitted by [him] in the absence of giving any ruling or determination on the merits of the federal constitutional presented claims," (id., ¶ 3); (2) "instructed and allowed her law secretary . . . to rubber stamp and deny any and every motion/petition submitted by [him][,]" (id., ¶ 4); and (3) "authorized herself and [her] law secretary to participate in ex parte communicicions [sic] with any Nassau County Assistant District Attorney which is assigned to answer and oppose [his] post-conviction motions[] . . . [as] part of an [sic] non-judicial and non-authorized scheme and plot to deny and defeat any and every pro se motion submitted by [him]."

(Id., ¶ 5).  According to plaintiff,

> "[a]t all times during [Judge] Berkowitz's commission and performance of said acts [her] judicial bench was deemed vacant by operation of law due to her failure to be sworn and to file her mandatory oath of office, and therefore [she] was not legally performing any judicial duties in a capacity of an [sic] 'State' official and/or employee (11ᵗʰ Amendment), and the acts that were performed by [her] were in complete absence of jurisdiction and were non-judicial (negating absolute immunity protection and defense)."

(Compl. at 5).

In his second cause of action, plaintiff alleges, *inter alia*, that Judge Berkowitz, "an unsworn temporaily [sic] appointed Nassau County Acting Supreme Court Justice, while acting under the color of State law and in the complete absence of constitutional, statutory, and common-law jurisdiction, violated [his] federal constitutional rights [by] . . . entertain[ing] and thereafter grant[ing] an unauthorized petition submitted by [ADA Grewert] which was dated June 17, 2015 which sought an injunction precluding . . . plaintiff . . . from filing any further motions pursuant to criminal indictment #2826NO5 with the court."  (Compl., ¶ 6).  According to plaintiff, Judge Berkowitz, "being fully aware that no statutory authority exist [sic] which authorizes an assistant district attorney to confer jurisdiction upon any court by way of petition seeking to preclude a pro se criminal defendant/litigant from accessing the court, with an [sic] deliberate indifference to the federal constitutional rights of the plaintiff and in total absence of jurisdiction, granted the assistant district attorney's unauthorized petition[] . . . [without] afford[ing] the plaintiff an [sic] hearing or an opportunity to be heard. . . in direct retaliation . . . [for] plaintiff's continuous attempts to access the court."  (Id.)

In plaintiff's fourth cause of action, he alleges, *inter alia*, that Judge Berkowitz "knew that [ADA] Grewert's petition for an injunction was not lawfully submitted and . . . contained

facts which were falsely sworn to . . .[;] [and] that [ADA] Grewert lacked authority to represent her in regards to [] plaintiff's disqualification/recusal application[,] . . . [but] disregarded such . . . [with] deliberate[] indifferen[ce] to [his] federal constitutional rights." (Compl., ¶ 17).

## B.    Claims against ADA Grewert

In his third cause of action, plaintiff alleges, *inter alia*, that ADA Grewert "illegally conferred jurisdiction upon an unsworn court and/or judge [Judge Berkowitz] by submitting a petition dated June 17, 2015 seeking and obtaining an injunction precluding [him] from motioning [sic] the court for relief." (Compl., ¶ 8).  According to plaintiff, ADA Grewert "intentionally caused [him] harm . . . without excuse or justification in order to obtain a collateral objective that is outside the legitimate ends of the [sic] process[,]" (id., ¶ 9), and "stepped outside of his prosecutorial zone by seeking and obtaining such injunction for the sole purpose of punishing the plaintiff and retaliating against [him] due to the plaintiff's continuous attempts to exercise his rights to access the court in order to be heard on the merits of his federal constitutional claims."  (Id., ¶ 10).

In his fourth cause of action, plaintiff alleges, *inter alia*, that ADA Grewert, "in complete absence of jurisdiction, appeared as an 'attorney' on behalf of [Judge] Berkowitz by submitting an opposing affidavit [in opposition to plaintiff's motion to disqualify and/or recuse Judge Berkowitz  which contained facts which were falsely sworn to dated June 17, 2015." (Compl., ¶¶ 13-14).  According to plaintiff, ADA Grewert, "knowing that [Judge] Berkowitz would accept (without questioning) and entertain and thereafter grant such unauthorized and perjured affidavit, intentionally submitted [it] . . . for the purpose of having [Judge] Berkowitz punish the plaintiff

by dening [sic] [his] pending post-conviction motions without considering the merits of such,"
(id., ¶ 15); and "stepped outside of his prosecutorial zone by becoming a witness on behalf of
[Judge] Berkowitz; by representing [Judge] Berkowitz; and by swearing falsely as an [sic]
witness to facts alleged in his jurisdictionally defective petition for an [sic] preclusion
injunction." (Id., ¶ 16).

C.      Claims against the County

In his fifth cause of action, plaintiff alleges, *inter alia*, that the County "is required by law
to assure that all elected and/or appointed Public Officials that presides [sic] in its geographical
County . . . take and thereafter file their Constitutional oath of office as prescribed and mandated
by law[;] [and] [t]he failure to do so prohibits the official from entering upon the performance of
his/her elected, chosen or appointed duties and renders their position vacant by operation of law."
(Compl., ¶ 18).  According to plaintiff, the County "has an unwritten custom, policy, and practice
which allows elected and temporaily [sic] appointed judges to preside on the bench in its County
in the total absence of taking and filing their oath of office . . . [,]" (id., ¶ 19); and "maintains the
custom, policy, and practice of allowing the supervising Nassau County Clerks [sic] Office to
turn an [sic] blind eye by not informing said judges that their oath of office is not on file whereby
condoning, approving, and endorsing said judges unauthorized presiding upon an unsworn
bench," (id., ¶ 20), thereby depriving criminal defendants, including plaintiff, "their
constitutional rights to be held, heard, tried and punished before and by an [sic] duly sworn
court/judge that has competent jurisdiction . . . over the criminal proceedings." (Id., ¶ 21).
Plaintiff further alleges that the County "fails to implement and enforce" the "statutes,

procedures, and established laws mandating without exception the taking and filing of judicial oaths of office[] . . . [and] requir[ing] its County Clerk employees to serve notice upon every Public Official that has failed to timely take and file their constitutional oath of office[,]" (id., ¶ 23); and "has allowed [Judge] Berkowitz to preside on the unsworn bench from approximately the year 2006 to 2015." (Id., ¶ 24).

In his sixth cause of action, plaintiff alleges, *inter alia*, (1) that "[t]he Nassau County District Attorney, a manager and policy-maker in her office, has established unwritten customs, policies, and practices which authorize and permits [sic] her appointed and hired assistant district attorneys to submit opposing affidavits and/or affirmations which contains [sic] knowingly sworn to false statements and facts which are designed to deceive and mislead the reviewing court(s) and are designed to protect and safe guard [sic] by any means necessary the finality of criminal convictions and sentences that are collaterally challenged by pro se defendants as being unconstitutionally obtained[,]" (Compl., ¶ 25); and (2) that the County "has abdopted [sic], approved and endorsed such policies, customs, and practices of the Nassau County District Attorney by failing to supervise such office and while having knowledge that such would cause the violation of post-conviction indigent pro se criminal defendants [sic] constitutional rights, [and] was deliberate [sic] indifference [sic] to such rights by allowing the district attorney to employ and enforce such policies, customs, and practices." (Id., ¶ 28).

### D. Relief Sought

Plaintiff seeks "punitive and compensatory damages" in an unspecified amount. (Compl., ¶ 5 and at p. 15).

III.    Discussion

A.    Standard of Review

Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, a district court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id., § 1915A(a), and "dismiss the complaint, or any portion of the complaint, if [it]– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id., § 1915A(b).

Moreover, district courts have the inherent authority to "dismiss a frivolous complaint _sua sponte_ even when the plaintiff has paid the required filing fee." Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000); see also Greathouse v. JHS Sec., Inc., 784 F.3d 105, (2d Cir. 2015) ("Courts have both statutory and inherent authority to _sua sponte_ dismiss frivolous suits.")  A complaint * * * is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  "The term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Id.

"[A] court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, * * * a category encompassing allegations that are fanciful, * * *, fantastic, * * * and delusional * * *." Denton v. Hernandez, 504 U.S. 25, 32-33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (quotations and citations omitted); accord Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts

available to contradict them."  Denton, 504 U.S. at 33, 112 S. Ct. 1728.

A court may also dismiss a claim as frivolous "if it is based on an 'indisputably meritless legal theory.'"  Montero v. Travis, 171 F.3d 757, 759-60 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 327, 109 S. Ct. 1827); accord Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).  "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, * * * or a dispositive defense clearly exists on the face of the complaint."  Livingston, 141 F.3d at 437 (citations omitted).  "A complaint will be dismissed as 'frivolous' when it is clear that the defendants are immune from suit."  Montero, 171 F.3d at 760 (quotations and citation omitted).

Moreover, although district courts "must construe [a  pro se] complaint liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests[,]"  J.S. v. T'Kach, 714 F.3d 99, 103 (2d Cir. 2013); accord Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), a pro se complaint that is frivolous may nonetheless be dismissed  sua sponte.  See, e.g. Tapia-Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir. 1999) (affirming sua sponte dismissal of frivolous pro se complaint); Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (accord).

B.      Immunity

"In determining immunity, [courts] accept the allegations of [the plaintiff's] complaint as true."  Kalina v. Fletcher, 522 U.S. 118, 122, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997); see also Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005) ("In determining whether the [prosecutors] are entitled to absolute immunity * * *, [courts] accept the allegations of [the plaintiff's] amended complaint as true.")

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured."

42 U.S.C. § 1983. "Despite the broad terms of § 1983, [the Supreme] Court has long recognized that the statute was not meant to effect a radical departure from ordinary tort law and the common-law immunities applicable in tort suits." Rehberg v. Paulk, — U.S. —, 132 S. Ct. 1497, 1502, 182 L. Ed. 2d 593 (2012); see also Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1665, 182 L. Ed. 2d 662 (2012) ("[Courts] read § 1983 in harmony with general principles of tort immunities and defenses." (quotations and citation omitted)). Two (2) of the "functions that are absolutely immune from liability for damages under § 1983," Rehberg, — U.S. —, 132 S. Ct. at 1503, are "actions taken by judges within the legitimate scope of judicial authority . . . [and] actions taken by prosecutors in their role as advocates . . . . " Id.

1.      Claims against Judge Berkowitz

"[J]udges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009); accord Cornejo v. Bell, 592 F.3d 121, 124 (2d Cir. 2010). Under the doctrine of absolute judicial immunity, judges are subject to suit seeking retroactive relief, including damages, only for: (1) "non-judicial actions, i.e., actions not taken in the judge's judicial capacity;" or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (internal citations omitted); see Stump v. Sparkman, 435 U.S.

349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven, 579 F.3d at 210.

"A complete absence of jurisdiction means that a court acts 'when it does not have any statutory or constitutional power to adjudicate the case.'" Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. Sept. 3, 2013) (summary order) (quoting Gross v. Rell, 585 F.3d 72, 84 (2d Cir. 2009)). "It is not to be confused with judicial actions 'in excess of' jurisdiction, for which a judge is immune 'even when the judge is accused of acting maliciously and corruptly.'" Id. (quoting Gross, 585 F.3d at 84); see also Mireles, 502 U.S. at 11, 112 S. Ct. 286 (holding that absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." (quotations and citation omitted)). Indeed, the Supreme Court long ago held:

> "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted [sic] to a greater punishment than that

10

authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons."

Bradley v. Fisher, 80 U.S. 335, 351-52, 13 Wall. 335, 20 L. Ed. 646 (1871). Thus, "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him[,]" Stump, 435 U.S. at 357, 98 S. Ct. 1099; and "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Id.

All of plaintiff's claims against Judge Berkowitz seek damages relating to actions taken in her judicial capacity during plaintiff's post-conviction proceedings; and the complaint is bereft of any factual allegations from which it may reasonably be inferred that Judge Berkowitz acted outside of her role as a judicial officer, or was acting without subject matter jurisdiction with respect to the conduct of which plaintiff complains. Plaintiff's conclusory allegations in that regard are insufficient to overcome Judge Berkowitz's absolute judicial immunity. See, e.g. Bracci v. Becker, No. 1:11-cv-1473, 2013 WL 123810, at * 7 (N.D.N.Y. Jan. 9, 2013), aff'd, 568 F. App'x 13 (2d Cir. May 29, 2014) (holding that conclusory allegations that a judge was acting in the absence of all jurisdiction, unsupported by any legal authority, are insufficient to overcome absolute judicial immunity); Posr v. City of New York, No. 15 Civ. 0584, 2015 WL 1569179, at * 2 (E.D.N.Y. Apr. 4, 2015) (dismissing that plaintiff's claims against a judge pursuant to 28

U.S.C. § 1915(e)(2)(B)(iii) on the basis that, "[p]utting aside his conclusory statements challenging [the judge's] 'competency,' plaintiff ha[d] not stated any facts that, if true, would suggest that [she] took nonjudicial actions or acted in the absence of jurisdiction while presiding over his criminal case."); Moore v. City of New York, No. 08-cv-2449, 2011 WL 795103, at * 4 (E.D.N.Y. Feb. 28, 2011) (holding that "self-serving, conclusory" allegations that a judge acted in the complete absence of all jurisdiction "do not overcome the protections of judicial immunity.")  Indeed, as an Acting Supreme Court Justice at all relevant times, Judge Berkowitz clearly had subject matter jurisdiction over plaintiff's post-conviction collateral proceedings and, thus, was not acting in the complete absence of all jurisdiction.  At best, plaintiff's complaint can be liberally read to assert claims that Judge Berkowitz acted in excess of her authority or with an improper motive, but those allegations are insufficient to deprive her of absolute judicial immunity.  See, e.g. Gross, 585 F.3d at 84 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]" (quotations and citation omitted)).  Accordingly, plaintiff's Section 1983 claims against Judge Berkowitz are dismissed in their entirety pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief against a defendant who is immune from such relief.

### 2.    Section 1983 Claims against ADA Grewert

ADA Grewert is also entitled to absolute immunity from plaintiff's Section 1983 claims against him.  With respect to absolute immunity, the Second Circuit has held that:

> "Absolute immunity affords 'complete protection from suit,' Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of

discretion within which to carry out their responsibilities,' Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action,"' Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.2005) (quoting Robison v. Via, 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir.2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985))."

In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95-96 (2d Cir. 2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities. See Imbler, 424 U.S. at 430, 96 S. Ct. 984; Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) ("Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" (quoting Imbler, 424 U.S. at 430, 96 S. Ct. 984)). Absolute prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, see, e.g. Giraldo, 694 F.3d at 165; Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006), including when a prosecutor seeks an indictment, see, e.g. Robison, 821 F.2d at 918; or when a prosecutor engages in administrative duties that are directly connected with the conduct of a trial. See, e.g. Van de Kamp v. Goldstein, 555 U.S. 335, 129 S. Ct. 855, 861-2, 172 L. Ed. 2d 706 (2009); Warney v. Monroe County, 587 F.3d 113, 124 (2009) ("a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.") In addition, "absolute immunity shields work performed [by a prosecutor] during a post-conviction collateral attack, at least insofar as the challenged actions are part of the prosecutor's role as an advocate for the state." Warney, 587 F.3d at 123. In sum,

"a prosecutor's function depends chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." Id.

Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. * * * Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (internal quotations and citations omitted); see also Shmueli, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

All of plaintiff's claims against ADA Grewert seek damages based solely upon his function as an advocate for the State during, or in response to, plaintiff's post-conviction proceedings before Judge Berkowitz. Plaintiff's conclusory allegations that ADA Grewert acted without jurisdiction or in excess of his authority are insufficient to overcome his absolute immunity. See, e.g. Schiff v. Suffolk County Police Dep't, No. 12-cv-1410, 2015 WL 1774704, at * 8 (E.D.N.Y. Apr. 20, 2015) ("Conclusory allegations that defendants went 'beyond the scope of their jurisdiction, without authority of law' are insufficient to withstand [dismissal]." (quotations and citation omitted)); Best v. Schecter, No. 12-cv-6142, 2013 WL 132733, at * 2 (E.D.N.Y. Jan. 10, 2013) (holding that the plaintiff's conclusory allegations that the prosecutors acted without jurisdiction or lawful authority were insufficient). Indeed, ADA Grewert is absolutely immune even for purportedly making false statements in the affidavit he submitted in opposition to plaintiff's motion to disqualify or recuse Judge Berkowitz, since the affidavit was

submitted pursuant to his advocacy functions. See, e.g. Flagler v. Trainor, 663 F.3d 543, 549 (2d Cir. 2011) (holding that the prosecutor was absolutely immune from the plaintiff's allegations that he made false statements within his function as an advocate and distinguishing cases denying absolute prosecutorial immunity for wrongdoing in connection with administrative or investigatory tasks); see also Simon v. City of New York, 727 F.3d 167, 172 (2d Cir. 2013), cert. denied, 134 S. Ct. 1934, 188 L. Ed. 2d 959 (2014) (accord); Peay, 470 F.3d at 68 ("Plaintiff's claims against [the prosecutor], which encompass activities involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality.") Accordingly, plaintiff's Section 1983 claims against ADA Grewert are dismissed in their entirety pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief against a defendant who is immune from such relief.


      C.      Section 1983 Claims against the County

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012); accord Matusick v. Erie County Water Auth., 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones, 691 F.3d at 80; see also Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, Cal. v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable

solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 563 U.S. 51, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S. Ct. 2018)); Humphries, 562 U.S. 29, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

   "A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. 51, 131 S. Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but

16

failed to take appropriate action to prevent or sanction violations of constitutional rights." Id.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action[,]" Connick, 563 U.S. 51, 131 S. Ct.

at 1360 (quotations and citation omitted), and "requires a showing that the official made a

conscious choice, and was not merely negligent." Jones, 691 F.3d at 81; see also Cash, 654 F.3d

at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more

than that a municipal policy or custom exists. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d

Cir. 1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient

[to withstand dismissal] in the absence of allegations of fact tending to support, at least

circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); accord

Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. Jan. 19, 2012) (summary order).

"Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference

that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573,

576 (S.D.N.Y. 2012); accord Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535

(S.D.N.Y. 2012).

Generally, "a single incident alleged in a complaint, especially if it involved only actors

below the policy-making level, does not suffice to show a municipal policy[,]" Ricciuti v. New

York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991), unless "'there is an officially

promulgated policy as that term is generally understood,' [or] 'where a single act is taken by a

municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area

in which the action was taken.'" Deraffele v. City of New Rochelle, No. 15-cv-282, 2016 WL

1274590, at * 16 (S.D.N.Y. Mar. 30, 2016) (second brackets in original) (quoting Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)).  Similarly, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train[,]" Connick, 563 U.S. at 61, 131 S. Ct. 1350 (quotations and citation omitted), because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[1] Id.

"The matter of whether a given official is a municipal policymaker is a question of law." Bliven, 579 F.3d at 214.  To the extent plaintiff alleges that Judge Berkowitz was a policymaker for the County, "municipal judges do not act as policymakers and therefore a municipality cannot be liable . . . for a Section 1983 claim based solely on the actions of its judges."  Dellutri v. Village of Elmsford, 895 F. Supp. 2d 555, 567 (S.D.N.Y. 2012) (citing cases).

Moreover, plaintiff's complaint is devoid of any factual allegations from which it may reasonably be inferred (1) that a formal policy, officially endorsed by the County, existed with respect to the conduct of which he complains; (2) that any policymaking official of the County took any action or made any decision which caused the alleged constitutional violations; (3) that there was a pattern of similar constitutional violations, such that the District Attorney knew or

---

[1]  This is not one of the "rare" cases recognized by the Supreme Court where "the unconstitutional consequences of failing to train [were] so patently obvious that [the municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations."  Connick, 563 U.S. at 63-64, 131 S. Ct. 1350.  Indeed, "[a] district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future constitutional violations in the usual and recurring situations with which the prosecutors must deal."  Id. at 67, 131 S. Ct. 1350 (quotations and citation omitted).

should have known that it was "highly predictable" that the prosecutors in the office would continue to violate the constitutional rights of those who come into contact with them, Connick, 563 U.S. at 71, 131 S. Ct. 1350; or (4) that the conduct of which he complains was so persistent and widespread as to practically have the force of law.  Plaintiff's conclusory allegations of a municipal policy, custom or practice are insufficient to state a plausible Section 1983 claim against the County.  See, e.g. Uwadiegwu v. Dep't of Soc. Servs. of County of Suffolk, — F. App'x —, 2016 WL 158463, at * 2 (2d Cir. Jan. 14, 2016) (summary order); Burgis v. New York City Dep't of Sanitation, 798 F.3d 63, 70 n. 8 (2d Cir. 2015), cert. denied, — S. Ct. —, 2016 WL 763339, at * 1 (Feb. 29, 2016) (holding that the plaintiffs' "conclusory allegations that [the policymaking official] knew about the discriminatory practice, without any allegation as to how he knew or should have known of it is not sufficient to establish a custom or policy."); Bolden v. County of Sullivan, 523 F. App'x 832, 834 (2d Cir. May 6, 2013) (summary order) (affirming dismissal of the plaintiffs' claims against the County because they "failed to allege, beyond conclusory statements in their complaint, any unlawful municipal policy or custom."); Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015) ("'[C]onclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.")  Accordingly, plaintiff's Section 1983 claims against the County are dismissed in their entirety pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief.


D.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given

leave to amend "when justice so requires." Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Grullon v. City of New Haven, 720 F.3d 133, 139-40 (2d Cir. 2013) (accord), leave to amend is not required, *inter alia*, where a proposed amendment would be futile. See Grullon, 720 F.3d at 140; Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

Any amendment to plaintiff's amended complaint would be futile because, *inter alia*, Judge Berkowitz and ADA Grewert are entitled to absolute immunity from plaintiff's Section 1983 claims against them, see, e.g. Dilacio v. New York City Dist. Council of the United Bhd. of Carpenters & Joiners of Am., 593 F. Supp. 2d 571, 578 (S.D.N.Y. 2008) (denying leave to amend as futile because the defendant was absolutely immune from suit); Hom v. Brennan, 304 F. Supp. 2d 374, 380 (E.D.N.Y. 2004) (holding that an amendment to add a judge as a defendant would be futile because he is protected by judicial immunity), and a liberal reading of the complaint does not indicate that any plausible claim might be stated. Accordingly, the complaint is dismissed in its entirety with prejudice.


IV. Conclusion

For the foregoing reasons, the complaint is *sua sponte* dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915A(b) for failing to state a claim upon which relief may be granted and seeking monetary relief against defendants who are immune from such relief. The Clerk of the Court is directed to close this case and, pursuant to Rule 77(d)(1) of the Federal

Rules of Civil Procedure, to serve notice of entry of this Order in accordance with Rule 5(b) of

the Federal Rules of Civil Procedure and record such service on the docket.

SO ORDERED.

_____
                                /s/
                                Sandra J. Feuerstein
                                United States District Judge

Dated:          April 13, 2016
                Central Islip, New York